**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br><br>AKORN HOLDING COMPANY LLC, *et al.*,[1]<br><br>Debtors. | Chapter 7<br><br>Case No. 23-10253 (KBO)<br>(Jointly Administered) |
| GEORGE MILLER, Chapter 7 Trustee of the bankruptcy estates of Akorn Holding Company LLC, et al.,<br><br>Plaintiff,<br>v.<br><br>TUCKER COMPANY WORLDWIDE, INC.,<br><br>Defendant. | Adv. Proc. No. 25-50214 (KBO)<br><br><br>**RE: A.D.I. 23** |

**BRIEF IN SUPPORT OF TUCKER COMPANY WORLDWIDE, INC.'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

> **BENESCH, FRIEDLANDER,
> COPLAN & ARONOFF LLP**
> Kevin M. Capuzzi (DE No. 5462)
> Juan E. Martinez (DE No. 6863)
> 1313 North Market Street, Suite 1201
> Wilmington, Delaware 19801
> Telephone: (302) 442-7010
> Email: kcapuzzi@beneschlaw.com
>       jmartinez@beneschlaw.com
>
> *Counsel to Tucker Company Worldwide, Inc.*

---

[1] The Debtors in these chapter 7 cases, along with the last four digits of their federal tax identification numbers, and cases numbers are Akorn Holding Company LLC (9190), Case No. 23-10253 (KBO); Akorn Intermediate Company LLC (6123), Case No. 23-10254 (KBO); and Akorn Operating Company LLC (6184), Case No. 23-10255 (KBO). The Debtors' headquarters is located at 5605 CenterPoint Court, Gurnee, IL 60031.

## TABLE OF CONTENTS

PRELIMINARY STATEMENT.................................................................................................1

PROCEDURAL BACKGROUND...........................................................................................2

FACTUAL BACKGROUND ...................................................................................................3

    I.   The Debtors.................................................................................................................3

    II.  Course of Business Between the Debtors and Tucker ...........................................3

LEGAL STANDARD ...............................................................................................................5

ARGUMENT ..............................................................................................................................6

    I.   Plaintiff Cannot Establish Essential Elements of His Claims.............................6

    II.  The Transfers Were Made in the Ordinary Course of Business of the Debtors
         and Tucker..............................................................................................................7

    III. Tucker Supplied New Value to Debtors After Receipt of the Transfers. ..........10

    IV. Tucker was a Mere Conduit Between the Debtors and Shipping Carriers. .......11

CONCLUSION..........................................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Podohnik v. U.S. Postal Service*,
409 F.3d 584 (3d Cir. 2005)................................................................................................6

*In re Am. Home Mortg. Holdings, Inc.*,
476 B.R. 124 (Bankr. D. Del. 2012) ................................................................................8, 9

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)........................................................................................................5, 6

*In re Archway Cookies*,
435 B.R. 234 (Bankr. D. Del. 2010) ........................................................................5, 6, 7, 8

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)........................................................................................................5, 6

*In re Lambertson Truex, LLC*,
458 B.R. 155 (Bankr. D. Del. 2011) ...............................................................................11

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
475 U.S. 574 (1986)...........................................................................................................6

*In re Proliance Int'l, Inc.*,
514 B.R. 426 (Bankr. D. Del. 2014) .........................................................................10, 11

**Statutes**

11 U.S.C. § 547............................................................................................................. *passim*

11 U.S.C. § 548............................................................................................................. *passim*

11 U.S.C. § 550............................................................................................................. *passim*

**Other Authorities**

Fed. R. Bankr. P. 7056....................................................................................................1, 5

Fed. R. Civ. P. 56....................................................................................................... *passim*

**PRELIMINARY STATEMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, as made applicable by Rule 7056 of the Federal Rules of Bankruptcy Procedure, Tucker Company Worldwide, Inc. ("Tucker") submits this memorandum of law in support of its motion requesting summary judgment in its favor.

George Miller, in his capacity as the Chapter 7 Trustee (the "Plaintiff" or "Trustee") of the bankruptcy estates of Akorn Holding Company LLC, Akorn Intermediate Company LLC, and Akorn Operating Company LLC (collectively, the "Debtors") commenced this adversary proceeding by filing an adversary complaint against Tucker. Plaintiff sought to avoid and recover payments made by the Debtors to Tucker made between November 25, 2022 and February 23, 2023 (the "Preference Period") totaling $291,195.02 (the "Transfers"). Plaintiff alleged that the Transfers are avoidable as preferential transfers or fraudulent transfers pursuant to 11 U.S.C. §§ 547(b), 548 and 550 of the United States Bankruptcy Code.

The Trustee cannot establish the essential elements of his case and cannot show that the Transfers are avoidable. Assuming *arguendo* that the Trustee could establish the essential elements of his case, the Transfers are otherwise protected from avoidance pursuant to 11 U.S.C. § 547(c)(2) because these were made within the ordinary course of business between Tucker and the Debtors. Additionally, Tucker provided subsequent new value to the Debtors amounting to $203,648.51. Pursuant to 11 U.S.C. § 547(c)(4), this amount may be offset against any preference exposure. Finally, Tucker lacked dominion and control over certain of the Transfers and Tucker acted as a mere conduit between the Debtors and the shipping carriers that provided transportation services for the Debtors. As such, Tucker lacked a possessory interest in the majority of the Transfers such that, taken together with Tucker's other defenses, provides a complete defense to Plaintiff's claims.

## PROCEDURAL BACKGROUND

On February 23, 2023 (the "Petition Date"), each of the Debtors filed voluntary petitions of relief under Chapter 11 of Title 11 of the United States Bankruptcy Code ("Bankruptcy Code").

On February 12, 2025, George L. Miller, in his capacity as the Chapter 7 Trustee (the "Plaintiff") commenced this adversary proceeding against Tucker and filed his *Complaint for Avoidance and Recovery of Transfers Pursuant to 11 U.S.C. §§ 547, 548, and 550 and to Disallow Claims Pursuant to 11 U.S.C. § 502* (the "Complaint"). [A.P. Docket No. 1].[2]

On June 11, 2025, the Court entered the *Order Establishing Streamlined Procedures Governing Adversary Proceedings with Total Amount in Controversy Greater Than $75,000.00 Brought by Plaintiff Pursuant to Sections 502, 547, 548 and 550 of the Bankruptcy Code* [A.P. Docket No. 6] (the "Procedures Order").

On July 11, 2025, Tucker served its disclosures pursuant to Bankruptcy Rule 7026 and Fed. R. Civ. P. 26(a)(1). [A.P. Docket No. 12]. On July 11, 2025, Plaintiff also served his disclosures pursuant to Bankruptcy Rule 7026(a)(1) and Fed. R. Civ. P. 26(a)(1). [A.P. Docket No. 13]. On August 11, 2025, Tucker filed its *Answer and Affirmative Defenses of Tucker Company Worldwide, Inc. to Complaint for Avoidance and Recovery of Transfers Pursuant to 11 U.S.C. §§ 547, 548, and 550 and to Disallow Claims Pursuant to 11 U.S.C. § 502*. [A.P. Docket No. 15].

Pursuant to the Procedures Order, as extended by consent of Plaintiff and Tucker, all fact and expert discovery was to be concluded by July 6, 2026. Pursuant to the Procedures Order, as extended by consent of Plaintiff and Tucker, all dispositive motions shall be filed and served by August 4, 2026.

---

[2] The term "A.P. Docket No." refers to filings in the above-referenced adversary proceeding no. 25-50214 (KBO).

2

## FACTUAL BACKGROUND

### I.     The Debtors

Before the Petition Date, the Debtors' business included developing, manufacturing, and marketing specialty pharmaceuticals, including prescription, consumer health, and animal health products. Complaint ¶ 13. The Debtors were industry leaders in branded and generic products in alternate dosage forms such as ophthalmic, injectables, oral liquids, topicals, inhalants and nasal sprays. *Id.*

Prior to the Petition Date, Tucker and one or more of the Debtors were engaged in one or more business transactions pursuant to the terms of agreements entered in connection therewith, which are evidenced by one or more contracts, purchase orders, invoices, communications, and other documents (collectively, the "Agreements"). Complaint ¶ 15. The Agreements concerned and related to the goods or services provided by Tucker to one or more of the Debtors as described herein. *Id.*

### II.    Course of Business Between the Debtors and Tucker

Tucker and the Debtors did business for several years prior to the Petition Date. Tucker Decl.[3] ¶ 6. In the course of their business relationship, Tucker acted as a logistics services provider and an agent between the Debtors and shipping carriers, negotiated freight rates, ensured the Debtors received the best price possible and reviewed invoices issued by the Debtors' shipping carriers to ensure they were correctly issued. Tucker Decl. ¶6.

---

[3]    References to "Tucker Decl. ¶ __" are to the *Declaration of James Tucker in Support of Tucker Company Worldwide, Inc.'s Motion for Summary Judgment* attached hereto as **Appendix 1**.

During the Preference Period, the Debtors' payments averaged 49 days from the invoice date. Tucker's Ordinary Course of Business Analysis is hereto attached as **Appendix 2**. Tucker Decl. ¶ 7.

During the one-year period prior to the start of the Preference Period from November 25, 2021 to November 25, 2022 (the "Historical Period"), the Debtors' payment averaged 38 days from the invoice date. Tucker Decl. ¶ 8; Appendix 2.

The Debtors' payments to Tucker during the Historical Period averaged $3,230.20. Tucker Decl. ¶ 9; Appendix 2. During the Preference Period, the Debtors' payments to Tucker averaged $3,333.21. Tucker Decl. ¶ 9; Appendix 2.

During the Preference Period, Tucker continued to ship goods to the Debtors. Tucker Decl. ¶ 10. In total, Tucker provided services valued at $203,648.51 to the Debtors during the Preference Period. Tucker Decl. ¶ 10. These services remained unpaid as of the Petition Date. Tucker Decl. ¶ 10. Evidence of the new value provided by Tucker to the Debtors is attached as **Appendix 3**.

Tucker did not exert any unusual collection pressure on the Debtors during the Preference Period. Tucker Decl. ¶ 11. Tucker did not, for example, demand shorter payment terms or COD terms. Tucker Decl. ¶ 11. Tucker did not threaten to sue the Debtors or have its attorneys call the Debtor in order to obtain payment on past due invoices. Tucker Decl. ¶ 11. In the years prior to the Petition Date, the Debtors would typically pay Tucker's invoices with ACH transfers, with some transfers paying for multiple invoices. Tucker Decl. ¶ 11.

Finally, in its capacity as a freight broker for the Debtors, Tucker obtained independent carriers to transport goods for the Debtors as needed.  Tucker Decl. ¶ 12. The Debtors would notify Tucker if they had a load of goods to be delivered to a particular destination.  Tucker Decl. ¶ 12. Tucker would obtain an independent carrier from its database to transport the goods for the

Debtors.  Tucker Decl. ¶ 12. The Debtors were the shipper or consignee on such shipments.  Tucker Decl. ¶ 12.

The Debtors would tender the goods directly to the carrier, along with an appropriate Bill of Lading.  Tucker Decl. ¶ 13. Upon completion of the work, the individual carriers would submit invoices associated with the Debtors' shipping activity to Tucker and Tucker would, in turn, submit invoices to the Debtors.  Tucker Decl. ¶ 13. The Debtors would send Tucker money (*i.e.,* the Transfers), which Tucker would then distribute to carriers to settle their open carrier invoices and a portion of the Transfers would cover Tucker's fee. Tucker Decl. ¶ 13.

## <u>LEGAL STANDARD</u>

Rule 56(c) of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Rule 7056 of the Federal Rules of Bankruptcy Procedure, directs that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). No genuine issues of material fact exist when a rational finder of fact could not rule in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986).

Summary judgment's operative goal is "to isolate and dispose of factually unsupported claims or defenses" in order to avert "full-dress trials in unwinnable cases, thereby freeing courts to utilize scarce judicial resources in more beneficial ways." *In re Archway Cookies*, 435 B.R. 234, 239 (Bankr. D. Del. 2010) (internal citations omitted).

The moving party bears the burden of showing that there are no genuine issues of material fact in dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In determining whether the movant has met its burden, the Court should consider all reasonable inferences in a light most

favorable to the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, the moving party may request summary judgment by averring an absence of evidence to support the nonmoving party's case. *See Archway Cookies*, 435 B.R. at 238 (citing *Celotex Corp.*, 477 U.S. at 325).

The burden then shifts to the nonmoving party to identify "some factual disagreement sufficient to deflect *brevis* disposition." *Archway Cookies*, 435 B.R. at 238. The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586-87; see also *Podohnik v. U.S. Postal Service*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted).

"If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson* 477 U.S. at 249-50 (internal citations omitted). Conversely, in a situation where there is a complete failure of proof concerning an essential element of the nonmoving party's case, Rule 56(c) necessarily renders all other facts immaterial and mandates a ruling in favor of the moving party. *Archway Cookies*, 435 B.R. at 239; *see also Celotex*, 477 U.S. 317, 322 (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

## **ARGUMENT**

### I.      **Plaintiff Cannot Establish Essential Elements of His Claims.**

To be avoided as a preferential transfer, a payment must satisfy all of the requirements of § 547(b):

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made ... on or within 90 days before the date of the filing of the petition; ... and

(5) that enables such creditor to receive more than such creditor would receive if (A) the case were a case under chapter 7 of this title; (B) the transfer had not been made; and (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

The Trustee bears the burden of proving each of these elements. 11 U.S.C. § 547(g); *see also Archway Cookies*, 435 B.R. at 240.

Here, Plaintiff commenced this action on February 12, 2025. Pursuant to the Procedures Order, discovery was to be completed by July 6, 2026. As evidenced by the docket in this adversary proceeding, Plaintiff has not taken any discovery and the time to do so has now passed. As such, the Trustee will be unable to sustain his burden of proving each of the essential elements of his claims against Tucker and Rule 56(c) necessarily requires summary judgment in favor of Tucker. *See Archway Cookies*, 435 B.R. at 239 ("[T]he non-moving party must adduce more than a mere scintilla of evidence in its favor; it cannot simply reassert factually unsupported allegations contained in its pleadings.") (internal citations omitted). However, assuming *arguendo* that Plaintiff could establish each of the essential elements of his claims against Tucker (he cannot), Tucker still has complete defenses to Plaintiff's claims.

II.    **The Transfers Were Made in the Ordinary Course of Business of the Debtors and Tucker.**

Even if a transfer satisfies all the elements of § 547(b), it nevertheless may not be avoided if the opposing party proves that the transfer satisfies one of the exemptions listed in § 547(c). *See*

*Archway Cookies*, 435 B.R. at 240. The party contending that the transfer falls under one of the exemptions bears the burden of proving that assertion by a preponderance of the evidence. *Id.* In the context of a motion for summary judgment, the burden of proof remains with the party asserting the nonavoidability of the transfer; the moving party simply needs to point to the absence of such proof to make its case. *Id.*

When evaluating the ordinary course of business defense, courts in the Third Circuit look for certain "hallmarks" including: (1) the length of time the parties engaged in the type of dealing at issue; (2) whether the subject transfers were in an amount more than usually paid; (3) whether the payments at issue were tendered in a manner different from previous payments; (4) whether there appears to have been an unusual action by the debtor or creditor to collect on or pay the debt; and (5) whether the creditor did anything to gain an advantage (such as gain additional security) in light of the debtor's deteriorating financial condition. *In re Am. Home Mortg. Holdings, Inc.*, 476 B.R. 124, 135-136 (Bankr. D. Del. 2012).

1.    *Length of Engagement (Factor 1)*

Tucker provided freight brokering services to the Debtors, since at least May 2021 and continuing into February 2023. Tucker, acting as a logistics services provider and an agent between the Debtors and shipping carriers, would negotiate freight rates, making sure the Debtors received the best price possible and review invoices issued by the Debtors' shipping carriers to ensure they were correctly issued. Tucker would receive all carrier invoices, audit those invoices then aggregate into one consolidated invoice to the Debtors. The Debtors would send money to Tucker for these invoices, which Tucker would then distribute to the appropriate carriers for carrier

8

invoices outstanding as well as Tucker's fee for its services.  During this time, the Debtors made dozens of payments to Tucker.

"Bankruptcy policy, as evidenced by the very existence of § 547(c)(2), is to promote such continuing relationships on level terms, relationships which if encouraged will often help businesses fend off an unwelcome voyage into the labyrinths of a bankruptcy." *In re Am. Home Mortg. Holdings, Inc.*, 476 B.R. at 136.  Tucker and the Debtors had a years-long business relationship and therefore this factor supports that the Transfers were made in the ordinary course of business between these two companies.

  2.  *Similarity of Transactions (Factors 2 and 3)*

The dollar amount and manner of the transactions between Tucker and the Debtors were substantially the same throughout their business relationship.  Tucker's analysis of the ordinary course of business defense is based upon a comparison of the amounts and frequency of the Transfers made during the Preference Period versus the transfers made in 2021 and 2022 up until the beginning of the Preference Period (the "Historical Period").  Tucker's analysis of its ordinary course of business defense demonstrates the similarity of the transactions. *See* Appendix 2.

During the Preference Period, the average days between invoice by Tucker and payment by Debtors was 49 days.  Tucker Decl. ¶ 7; Appendix 2. During the Historical Period, the average days between invoice and payment was 38 days.   Tucker Decl. ¶ 8; Appendix 2. This slight deviation is well within a reasonable range and the increase in number of days from invoice to payment during the Preference Period confirms that Tucker was accommodating the Debtors despite their financial difficulties and continued to supply them with valuable services even as the Debtors stretched out payments.

The amount of the payments made during the Historical Period and the Preference Period are also similar.   The Transfers made during the Preference Period averaged $3,333.21 while the transfers made during the Historical Period averaged $3,230.20.  Tucker Decl. ¶ 13; Appendix 2. Both the manner of the Transfers and the amount of the Transfers were substantially similar to the one-year period before the Petition Date and the Historical Period transfers, satisfying the second and third factors.

3.      *No Unusual Collection Activity (Factors 4 and 5)*

The remaining two hallmarks discussed in the *American Home Mortgage* analysis likewise weigh in favor of the OCB Defense.  First, there were no unusual actions by Tucker or the Debtors to pay on the invoices.  Tucker Decl. ¶ 11. The method of tender—i.e. ACH—was consistent throughout the Historical Period and the Preference Period. Tucker Decl. ¶ 11.

Based on the foregoing, and Tucker's analysis attached as Appendix 2, Tucker has a complete ordinary course of business defense to the Transfers.

**III.    Tucker Supplied New Value to Debtors After Receipt of the Transfers.**

Section 547(c)(4) of the Bankruptcy Code, otherwise known as the "new value exception," provides that the trustee may not avoid a transfer that was "to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor…; and on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor." 11 U.S.C. § 547(c)(4)(B). "New value" is defined under Section 547(a)(2) as "money or money's worth in goods, services, or new credit ... that is neither void nor voidable by the debtor or the trustee under any applicable law." 11 U.S.C. § 547(a)(2).

The subsequent new value defense is intended to encourage creditors to work with companies on the verge of insolvency. *In re Proliance Int'l, Inc..* 514 B.R. 426, 430 (Bankr. D.

10

Del. 2014). In addition, it is designed to ameliorate the unfairness of allowing the trustee to avoid all transfers made by a debtor to a creditor during the preference period without giving any corresponding credit for advances of new value that benefitted the debtor. *Id*.

Tucker's documents indicate that Tucker provided the Debtors with new value in the amount of $203,648.51 as documented by numerous invoices between December 27, 2022 through February 22, 2023. *See* Appendix 3. Thus, applying solely Tucker's New Value Defense, Tucker's preference exposure is reduced from $291,195.02 to $87,546.51. Combined with Tucker's other defenses, Tucker clearly has a complete defense to Plaintiff's claims.

**IV.     Tucker was a Mere Conduit Between the Debtors and Shipping Carriers.**

Although the Bankruptcy Code does not define "transferee," courts have imposed the requirement that a party have dominion and control over the transferred funds or property in order to be a transferee under § 550. See *In re Lambertson Truex, LLC*, 458 B.R. 155, 158 (Bankr. D. Del. 2011) (citing *Bonded Fin. Servs., Inc. v. European American Bank*, 838 F.2d 890, 893 (7th Cir. 1988)). This requirement has created the "mere conduit" defense "for parties who act as a mere conduit in receiving a transfer solely for another and not for their own benefit." *Lambertson Truex*, 458 B.R. at 158.

A party has dominion and control over money when that party has the right to put the money to its own purpose. *Id*. An agency relationship is still subject to this analysis, however, "[w]hen A gives a check to B as agent for C, then C is the 'initial transferee' the agent may be disregarded as the agent does not have control over the funds." *Id*. at 158-59 (internal quotations and citations omitted).

Indeed, that was the relationship that existed between the Debtors and Tucker. The Debtors gave money to Tucker so that Tucker could pay carriers on the Debtors' behalf.  Tucker was bound

under its contract with the Debtors to pay the carriers.  Tucker did not have the right to use the money for its own purpose besides receiving certain fees it was owed by the Debtors in accordance with their agreement.  But the remaining amount did not belong to Tucker and Tucker properly paid carriers on behalf of the Debtors.  Tucker acted as a mere conduit between the Debtors and the carriers a substantial portion of the Transfers.  Accordingly, Tucker lacked dominion or control over, and had no possessory interest in these amounts.

## CONCLUSION

WHEREFORE, Tucker respectfully requests that the Court grant this Motion for Summary Judgment and dismiss Plaintiff's Complaint against Tucker with prejudice and grant such other and further relief as may be just and proper.

Dated: August 4, 2026

**BENESCH, FRIEDLANDER,
COPLAN & ARONOFF LLP**

 */s/ Kevin M. Capuzzi*
Kevin M. Capuzzi (DE No. 5462)
Juan E. Martinez (DE No. 6863)
1313 North Market Street, Suite 1201
Wilmington, Delaware 19801
Telephone: (302) 442-7010
Email: kcapuzzi@beneschlaw.com
        jmartinez@beneschlaw.com

*Counsel to Tucker Company Worldwide, Inc.*

12